# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br> vs. <br><br> MARIA CARATACHEA, <br><br> Defendant. | Case Nos. <br><br> 12cr4556-LAB/13cr0158-LAB <br><br> **ORDER ADOPTING REPORT AND RECOMMENDATION** |

Attorney Lisa K. Baughman, a member of this district's indigent defense panel, filed vouchers for payment in two separate cases in which she represented a defendant who was charged in one case with transporting aliens and in the other with conspiracy to transport aliens. At first blush, the amounts claimed by Ms. Baughman seemed high, so this Court referred her vouchers to Magistrate Judge Mitchell D. Dembin to review and to make appropriate recommendations. Judge Dembin met with Ms. Baughman and went over the two cases, the work she performed, and her vouchers. At the conclusion of the meeting, Ms. Baughman agreed to revise and resubmit both vouchers. Her new vouchers reflected very modest reductions of the amounts that she originally claimed.

On October 16, 2014, Judge Dembin issued a Report in which he recommended that Ms. Baughman's payment vouchers should be substantially reduced from the amounts that she claimed. Ms. Baughman filed objections to Judge Dembin's recommendations. This Court has now independently reviewed Ms. Baughman's vouchers in light of Judge Dembin's Report and has

considered her objections. For reasons outlined below, the Court agrees with Judge Dembin that Ms. Baughman's vouchers should be reduced, overrules her objections to the Magistrate Judge's Report, and adopts Judge Dembin's recommendations.

Ms. Baughman's client, Maria Caratachea, was charged with two crimes that are fairly standard in this district. First, in 2012, she was charged with alien smuggling. That charge was initially tabled when she agreed to participate in a deferred prosecution program. However, before she could complete the program, she was arrested again in 2013 and charged with conspiracy to transport aliens. Following her second arrest, the government revoked the deferred prosecution agreement and reinstated the 2012 alien smuggling charge against her. Ms. Baughman was appointed to represent the defendant on both cases.

In fairly short order, Ms. Caratachea resolved her cases by pleading guilty to both charges. No motions were filed in either case, nor were any depositions taken of the aliens who were allegedly being smuggled.  The two cases were about as straightforward as cases can be. In addition, Judge Dembin found that "much of the work in each case overlapped. Virtually identical sentencing memoranda and objections to the pre-sentence report were filed in each case."

There was one wrinkle in the cases. While the defendant was being held in custody, she was notified that her mother was terminally ill. Sadly, her mother died while Ms. Caratachea remained in custody. Ms. Baughman filed two motions for Ms. Caratachea to be released from custody on furloughs.  Both motions were granted and Ms. Caratachea was able to visit her mother in hospice before she died, and later to attend her mother's funeral. Not counting the court time spent arguing the motions, Ms. Baughman billed over 5.6 hours in connection with preparing and filing the furlough requests. Judge Dembin found this amount of time to be excessive and unreasonable, and this Court agrees.

As both a district judge and as a former magistrate judge, this Court has experience dealing with requests for furloughs on compassionate grounds by in-custody defendants. Typically, these types of requests are uncomplicated and handled expeditiously. Unless there is reason to suspect that the request is based on ulterior motives, the resolution of these requests requires no exacting proof or demanding preparation by appointed counsel. As in the typical case, no complications are apparent

1  here, and it is simply inconceivable that it would take experienced counsel over five hours to prepare
2  and file routine furlough requests (again, not counting court time to present the requests).

3      Ms. Baughman's vouchers were laden with other charges that Judge Dembin characterized as
4  "padding." As recounted more fully in Judge Dembin's report, examples include tasks such as "send
5  email to AUSA," "read email from AUSA," "reply to email from AUSA." Ms. Baughman billed
6  *6 minutes each* for these tasks, and for literally hundreds of other such "mundane" tasks. Without
7  recounting every example or repeating verbatim Judge Dembin's thorough analysis, suffice it to say
8  that this Court agrees that Ms. Baughman's admitted practice of billing at least 6 minutes for each and
9  every task that she performed, however routine or trivial, and regardless of how long it took to *actually*
10 *perform the task,* had the effect of overvaluing her time and improperly driving up the cost of
11 representation.

12     Judge Dembin also supported his recommendation for a reduction of Ms. Baughman's
13 vouchers by comparing them to a sampling of vouchers that had been submitted by other CJA panel
14 members who defended alien smuggling cases. As the Judge notes in his Report, the average charge
15 for defending this type of case according to the sample was $2,039 per case. The median charge was
16 $1,394 per case for all of the vouchers in the sample. Ms. Baughman's revised vouchers were in the
17 amounts of $4,816.55 and $8,234.46, respectively *more than double and more than quadruple* the
18 amounts billed by equally competent defense counsel in comparable cases. The Court agrees with
19 Judge Dembin that there was nothing unusual or complex about this defendant's cases that explains
20 or justifies such gross discrepancies between the amounts Ms. Baughman claimed and the average
21 amount from the sample.

22     Although the Criminal Justice Act authorizes payment to counsel up to $9,700.00 for defending
23 indigent defendants (even more if the case is extended or complex), at the end of the day the amount
24 claimed by counsel must be reasonable in light of the circumstances of the case. Here it is not. The
25 Court agrees with Judge Dembin that the fees claimed in these two cases by attorney Baughman are
26 excessive and unreasonable, and for that reason it denies them.

27     Regarding Ms. Baughman's specific objections to the Magistrate Judge's Report and
28 Recommendation, the Court overrules them. The Court agrees with the Report and Recommendation

that: (1) the practice of automatically and routinely billing 6 minutes for each and every task performed in connection with a case, irrespective of the actual time required, can be fairly characterized as "bloat;" (2) many, if not most of the calls and emails referenced in the vouchers appear to be "ordinary" and "routine," if not "mundane." (3) notwithstanding that CJA policy *permits* attorneys to bill in 6-minute increments, the rule of reason applies to all amounts claimed. Billing thousands of dollars by parsing routine tasks requiring less than a minute to perform into separate 6-minute charges is not reasonable, and, as this case demonstrates, results in overvaluing the attorney's time and driving up the cost of indigent defense to taxpayers; (4) the method used by the Magistrate Judge, *i.e.*, considering a sampling of recent vouchers from alien smuggling cases to evaluate the fees claimed here, was reasonable and provided the Magistrate Judge with a reliable basis for his evaluation; (5) the fee reductions recommended by the Magistrate Judge are reasonable in view of the routine nature of these cases and the other factors identified in the Report and Recommendation; and (6) the cited provisions relating to the confidentiality of CJA vouchers are inapposite here. Mere reference to the *fact* that the defendant submitted to a psychiatric exam does not disclose any *privileged* information about the defendant. Counsel actually revealed more about the defendant's psychiatric condition (including that she had been examined by a psychiatrist) during her sentencing remarks than is revealed in this order or in the Magistrate Judge's Report and Recommendation. Nor is the privacy of counsel, financial or otherwise, compromised by the public filing of this order. The public generally has the right to see and have access to documents filed in connection with judicial proceedings, unless compelling reasons exist to deny access. *Oregonian Publ'g Co. v. U.S. Dist. Court*, 920 F.2d 1462, 1465 (9th Cir. 1990). Revealing the total fee amount that was claimed in these cases, as well as the amount that was actually authorized, is consistent with the public's right of access. The public has a right to evaluate whether CJA funds are being properly administered and whether federal judges are acting as responsible stewards of public money.

The Report and Recommendation of the Magistrate Judge is **ADOPTED IN ITS ENTIRETY**. The objections of counsel to the Report are **OVERRULED.** In case 13cr0158, the Court authorizes

/ /

/ /

1  a total fee of $2,500.00. Similarly, in case 12cr4556, the Court authorizes a total fee of $2,500.00. The
2  total fees in these combined cases are not to exceed $5,000.00.
3      **IT IS SO ORDERED.**
4
5  DATED: November 6, 2014
6
7  **HONORABLE LARRY ALAN Burns**
   United States District Judge
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28